THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* NATHANIEL O. BOYD, Defendant-Appellant.

First District (3rd Division)   No. 78-429

Opinion filed March 21, 1979.

Edward L. Overtree, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger and James V. Marcanti, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE SIMON delivered the opinion of the court:

The defendant, Nathaniel Boyd, was found guilty in a bench trial of two counts of armed robbery of a cab driver, and sentenced to a term of 4 to 6 years imprisonment. On appeal, the defendant contends: (i) the trial court erred in permitting the prosecutor to ask his own witness a leading question on redirect examination, (ii) it also erred in preventing defense counsel's attempt to impeach two prosecution witnesses who identified the defendant, (iii) the trial court improperly sustained the prosecutor's objections to testimony as hearsay, and (iv) the defendant was not proved guilty beyond a reasonable doubt.

At trial, Carol Banks testified that at 4 a.m. she and her baby were passengers in a parked taxicab. Two men approached the cab, one on each side, and the man on the passenger side attempted to open the locked door. Meanwhile, the other man put a pistol through the half-opened window on the driver's side, announced that it was a robbery, and ordered the driver out of the cab. She positively identified the defendant as the man who approached the cab on the passenger side.

She further testified that the two men pulled the driver out of the cab, brought him around to the trunk, and took his watch, ring, and money. Then the defendant's accomplice approached her, ripped her shirt open and took money out of her bra. At this time police officers arrived, and as they were arriving, the two robbers fled. Banks, who had watched as the defendant fled, led a police officer to a bush behind which the defendant was hiding and the officer arrested him.

The cab driver stated that he was robbed by two men, one of whom had a gun. He further stated that $40, a watch, and a ring were taken from him, and he identified a watch and ring as the articles taken from him during the robbery. When the defendant was arrested, the cab driver identified him as one of the robbers. During cross-examination, however, the cab driver admitted that he did not recognize the defendant at the trial because he had not seen the defendant in over a year, and the

defendant had grown during that time. On redirect examination, the cab driver stated that he was present at the defendant's arrest and that the individual the police arrested in his presence was one of the men who had robbed him.

One of the arresting officers testified that while he and his partner were patrolling in a marked squad car, they were informed by a citizen that a cab was being robbed about two blocks away. As they approached the address given them, they observed several people standing near a cab, at which time two men fled. The cab driver and Banks were yelling that they had been robbed, and pointed out a person hiding in a bush a short distance away. The officer observed that man lying on the ground face down, and in court identified the defendant as that person. The officer further stated that $40 was found in the defendant's pocket and that a watch and ring were recovered from his hat. The officer identified the watch, ring, and currency in court as articles recovered from the defendant upon his arrest.

The defendant, testifying on his own behalf, stated that he was at the scene of the crime near the time it was committed. He explained, however, that he was on his way from his sister's house to a store to make a phone call. His sister lived, at that time, a few houses from the scene of the crime. The defendant stated that he had about $42 with him, which was given to him by the brother of a paraplegic friend to purchase things for the friend.

The defendant stated that as he approached the scene of the crime, he observed a man and a woman outside a cab, and a police car approaching with its lights and siren on. He testified that he stopped by a single bush about 2 feet wide, which came up to his knees. It was a bush no one would be able to hide behind. One of the police officers drew his weapon and ordered him not to move.

The defendant also testified that his sister and her friend were near the scene, and he told his sister to take the $40 out of his pocket and return it to his friend, at which time an officer grabbed her hand and took the money. When confronted with the ring and watch, the defendant denied ever seeing them prior to trial.

Allen Mitchell, the defendant's friend and a paraplegic, testified that on the day in question, while he was in the hospital, he had two visitors— his brother and his sister. He stated that he receives $43 each month from public aid and that he sent $40 of it to the defendant via his brother, Calvin Mitchell. Allen Mitchell further stated that he never before had sent money to the defendant.

The next witness, Calvin Mitchell, testified that on the evening in question he gave the defendant $40 to buy clothes for his brother, Allen, since the defendant knew the style of clothing that Allen liked. On cross-

examination, Calvin Mitchell stated that he actually did not remember what date in October of 1972 he gave the money to the defendant.

The defendant's first contention is that the prosecutor was improperly allowed to ask his own witness, John Edmond, the cab driver, a leading question on redirect examination. The exchange complained of occurred when Edmond responded affirmatively to the question, "Now, the individual that the police arrested in your presence on October 6, 1972, was that one of the individuals that robbed you?" The defendant's objection to this question as leading was overruled.

■■ Here, even if the prosecutor's inquiry can properly be characterized as leading, no prejudicial error occurred. Because the cab driver earlier, on direct examination, had testified that the person the police arrested that night was one of the robbers, his answer to the prosecutor's question on redirect merely repeated his earlier testimony—testimony already on record. Thus, no prejudicial error could have been caused by the repetitious exchange on redirect examination.

The defendant's second complaint, that he was prejudiced by being prevented from impeaching two prosecution witnesses who had identified him, also is unpersuasive. The defendant asserts that the trial judge erred in limiting cross-examination of the passenger about the conditions under which she identified the defendant at the police station, and in sustaining the People's objection to the defendant's inquiry whether anyone told the cab driver that he would not regain his watch and ring unless the defendant was convicted.

Before cutting off the defendant, the trial judge permitted considerable latitude in questioning the passenger on matters which had not been brought out on direct examination relating to her identification of the defendant. Defendant was allowed to inquire about salient facts concerning the scene at the police station; in fact, the judge overruled an earlier objection to the scope of the questions on this point. The judge at last offered to let counsel proceed "if he felt he had something particular in mind"; but counsel was clearly scrounging in the dark. He had already questioned the witness about her ride in the cab to the police station but admitted that, so far as he knew, nothing material had occurred during the trip. Defense counsel also asked the passenger if she had ever been convicted of a crime, and she responded in the negative.

■■ The question to the cab driver regarding his recovery of his watch and ring was little more than a red herring. The defendant was trying to show financial bias, suggesting that the driver was testifying against the defendant to be sure of recovering his property. Yet this incentive to falsify testimony exists in any criminal trial for any witness whose property has been stolen and would be apparent to the judge hearing the case. Moreover, the driver's credibility in court was of only remote

importance because he did not identify the defendant at trial. The vital time was at the arrest, long before trial or any conversation he might have had regarding how he could recover his watch and ring. As for the driver's identification of his property, the defendant does not suggest any doubt; rather the defendant says he never saw the property before trial. If the watch and ring are not the cab driver's, then either the police officer, for whom no motive for falsification has been suggested, coincidentally had on hand a spare watch and ring, which he was willing to give up to frame the defendant, on the chance of persuading the driver to go along with the falsehood; or the passenger, who testified that a watch and ring were taken, is in on the conspiracy to frame a stranger. A commonplace and weak reason for bias could hardly support such a fantastic theory, which even the defendant does not explicitly espouse. The disallowed question was therefore unnecessary and merely confusing. It sought to put the victim on trial instead of the defendant, and excluding it was not unreasonable.

Although a defendant generally should be given the widest possible latitude in cross-examining a witness to establish bias, or self-interest, or lack of credibility—and although this principle can sometimes support even questioning beyond the scope of direct examination—the form that latitude takes rests largely in the sound discretion of the trial court. Where, as here, the trial court did in fact exercise sound judgment, and did permit the defendant considerable freedom in his inquiries, there was no clear abuse of discretion that would manifestly prejudice the defendant, and so warrant interference by a court of review. See *People v. McCain* (1963), 29 Ill. 2d 132, 193 N.E.2d 784.

■ The defendant next claims that the trial judge twice erred in sustaining the prosecutor's objections to certain testimony on the grounds that answers which would have been elicited by the defendant's questions would be hearsay. Our examination of the record demonstrates that while the defendant is correct in asserting that the trial judge erred, any error which resulted was harmless. When the defendant was not allowed to testify as to what his sister told him when he allegedly was at her apartment the morning of the robbery, as well as when Allen Mitchell, the defendant's friend, was precluded from telling the court what he said to his brother at the hospital the afternoon of the robbery, the court erred in cutting off the responses as hearsay. (See *People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.) However, the defendant and Mitchell were asked these questions to explain how the defendant happened to have $40 on his person when he was arrested. Other testimony tending to support his explanation—that the money was given him by Calvin Mitchell—was introduced to prove what the improperly excluded evidence would have gone to prove. Accordingly, because the improper exclusion of the

testimony in question was cured by the other testimony which was received in evidence, any error resulting from that exclusion was nonprejudicial to the defendant, and harmless.

Finally, we reject the defendant's argument that his guilt of armed robbery was not established beyond a reasonable doubt. The passenger testified that she observed the defendant robbing the cab driver and that he attempted to rob her. She led the police to where the defendant was hiding, and also identified him both at the police station and at trial. The cab driver identified the defendant as one of the men who robbed him and as the person whom the police arrested. Although the cab driver failed to recognize the defendant at trial, this was understandable—he had not seen the defendant in over a year, and he said the defendant had grown during that time. Further, both the passenger and cab driver testified that the defendant took a watch, a ring, and money from the cab driver. The arresting officer told the court that $40, a watch, and a ring were found on the defendant's person when he was arrested, and the cab driver identified the watch and ring as those the defendant took from him. Although the defendant attempted to offer a different explanation for his having the $40, it was the trial court's responsibility to decide whether to believe or discount the defendant's story. And even if the defendant could have satisfactorily explained the presence of the money he had when arrested, he was not able to offer any explanation of the ring and watch he carried, other than to deny he was carrying them. The trial judge was free to believe the arresting officer, who testified the watch and ring were recovered from the defendant's hat, rather than the defendant's denial.

■ Where, as here, the defendant was positively identified by two eyewitnesses (*People v. Williams* (1975), 60 Ill. 2d 1, 322 N.E.2d 819; *In re Winslow* (1977), 46 Ill. App. 3d 962, 361 N.E.2d 622), and he failed to establish why he was carrying property he was accused of stealing when arrested immediately following the robbery (*People v. Hawkins* (1963), 27 Ill. 2d 339, 189 N.E.2d 252; *People v. Pelkola* (1960), 19 Ill. 2d 156, 166 N.E.2d 54), the evidence was not so unsatisfactory, improbable or implausible as to justify a reasonable doubt of the defendant's guilt. The trial judge did not err in finding the defendant guilty beyond a reasonable doubt of armed robbery. *People v. Mendoza* (1978), 62 Ill. App. 3d 609, 615, 378 N.E.2d 1318.

Judgment affirmed.

McNAMARA and RIZZI, JJ., concur.