THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RAYNARD WALLACE, a/k/a Raymond Wallace, Defendant-Appellant.

First District (1st Division)    No. 79-2236

Opinion filed November 24, 1980.

William E. Reynolds, of Edward R. Vrdolyak, Ltd., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Joan S. Cherry, and Alexander Vroustouris, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a bench trial, Raynard Wallace, otherwise known as Raymond Wallace (defendant), was convicted of intimidation (Ill. Rev. Stat. 1977, ch. 38, par. 12—6(a)(1)). He was sentenced to two years, and he appeals.

Sandra Corbin testified that on March 29, 1978, she was working as a waitress in the S & F Restaurant. She was taking a woman's order and some people "came up and stood behind the woman." The witness went to the back of the restaurant and heard "kids hollering, 'Let my mama's purse go. Let my mama's purse go.'" She returned and saw someone with a gun. The people knocked the woman out and took her purse. She identified defendant as one of the robbers.

Sandra Corbin also testified she was a State's witness in a resulting and then pending armed robbery case againt defendant. On May 5, 1978, she stopped in at the same restaurant. She was not working there at the time. Defendant "came in the restaurant." He said "his family was mad because they had to pay out nine hundred * * * some dollars for bail." The witness also testified:

> "Then he [defendant] said he should—he['s] going to have some-body kill me or he should have someone else kill me or do something. Then he said he ought to beat my ass. Then he looked like he was walking out the door and he turned around and came back and reached for something."

The witness also said, "He [defendant] unbuttoned his coat and looked like he was reaching for something. I don't know what it was * * * and I wasn't going to stand up there and find out. I broke and ran to the back." She was nervous, upset, and frightened. She then called Investigator Joseph Strotter.

Investigator Strotter testified that on May 5, 1978, he received a phone call from Sandra Corbin. She sounded "very excited" and "fright-ened." On May 6, he arrested defendant. He had previously arrested him around April 11 for the robbery in the restaurant. In connection with that robbery, defendant was put in a lineup and identified by Sandra Corbin. He also testified Sandra Corbin appeared at the preliminary hearing with regard to the robbery.

Leonard Wojtecki testified he was an assistant State's Attorney on May 6, 1978. He talked to defendant who initially said it was his brother who was present at the restaurant and they looked alike. Defendant told

him he was not even at the scene at the time Sandra Corbin said the defendant had threatened her. Defendant "indicated that his brother used to baby-sit for the victim," "that his brother was having an affair with her," and "that her husband subsequently found out about this and threatened him." These matters were denied by Sandra Corbin in her testimony. Defendant said later he was in the restaurant and had an argument with the victim. During the argument, he threatened to beat her up for lying. He said she was lying about his participation in this armed robbery because of the mistaken identity between his brother and him.

Anthony Wallace, the brother of defendant, testified he was a baby-sitter for Sandra Corbin one time at his mother's house. Sandra Corbin picked up the child in the presence of his mother. Ruth Wallace, mother of defendant, testified she saw Sandra Corbin come to her apartment and pick up the baby.

Defendant testified that on March 29, 1978, on the date of the alleged armed robbery, he was not at the restaurant and therefore could not have seen Sandra Corbin then. He stated he did not know if his brother was there or not. When he was arrested for the armed robbery, he was taken to the police station and put in a lineup. He saw Sandra Corbin, but "she did not identify" him. He said the police did not tell him what he was arrested for because she was not sure it was the defendant. At one point he said he knew Sandra Corbin was there to identify him. He also said he did not know she was a witness to the robbery and he "was surprised to see her."

Defendant testified Sandra Corbin was not present at a session of the court in the instant case held May 5, 1978, and "she wasn't a witness against me." But, defendant also testified he saw Sandra Corbin in court before the same judge on May 5, 1978. He also said, "I didn't see her." He added, "All I seen is her sitting down, and the next thing I know she was gone."

On that day, on his way home, he saw Sandra Corbin. He said she was in front of the restaurant on the sidewalk. He asked her, " 'Can't you see that I'm all messed up here, that my parents paid out a whole lot of money for something that I didn't even do? And you know I didn't do it * * *.' " He said she told Officer Strotter he was not the one. He asked her why she changed that. They "started getting loud" and "cussing at each other." Then "she said she didn't want to talk about it anymore," so he "left it at that." She went into the restaurant.

Defendant testified he "did not threaten her." He said, "I was trying to get her to stop doing something * * * lying." He said, "I was trying to get her to cool her boyfriend down." Her boyfriend was talking about "jumping on" defendant's brother.

## I.

■■ Defendant first contends he was not proved guilty beyond a reasonable doubt. The Illinois Criminal Code (Ill. Rev. Stat. 1977, ch. 38, par. 12—6(a)(1)) provides:

"(a) A person commits intimidation when, with intent to cause another to perform or to omit the performance of any act, he communicates to another a threat to perform without lawful authority any of the following acts:

"(1) Inflict physical harm on the person threatened * * *."

Intimidation requires specific intent to cause the victim to perform or omit to perform certain acts. *People v. Smith* (1980), 78 Ill. 2d 298, 306, 399 N.E.2d 1289.

■■ Sandra Corbin testified she saw defendant rob a woman in the S & F Restaurant on March 29, 1978. She picked defendant out of a police lineup. She was the State's witness against defendant in this prosecution for armed robbery. On May 5, she was frightened by defendant who threatened to kill her or "beat her ass." Defendant himself testified he "was trying to get her to stop doing something * * * lying." Defendant had been to court on the armed robbery charge that day although his testimony was indecisive on this point. Defendant testified he did not know she was a witness in his pending offense and he never threatened her or said he would kill her if she testified. However, in this type of situation, "the jury is not required to believe the defendant." (*People v. Foster* (1979), 76 Ill. 2d 365, 373, 392 N.E.2d 6.) "[T]he testimony of one witness, if positive and credible, is sufficient to convict, even though it is contradicted by the accused." (*People v. Gray* (1965), 33 Ill. 2d 349, 356, 211 N.E.2d 369.) Sandra Corbin's testimony was positive and credible as to defendant's actions. On the contrary, the record shows the credibility of defendant was doubtful. We find this evidence sufficient to show beyond a reasonable doubt that defendant possessed the intent to cause Sandra Corbin not to testify at his trial for armed robbery and that he acted to intimidate her.

Furthermore, where there are conflicting views of the facts, we are governed by the principle expressed in *People v. Powell* (1978), 72 Ill. 2d 50, 65, 377 N.E.2d 803, *cert. denied* (1979), 440 U.S. 907, 59 L. Ed. 2d 455, 99 S. Ct. 1215, quoting *People v. West* (1958), 15 Ill. 2d 171, 176, 154 N.E.2d 286:

" '[W]here a case is tried by the court without a jury, the determination of the credibility of the witnesses and the weight to be accorded their testimony is committed to the trial judge; and, unless it can be said that the court's judgment is found to rest on doubtful, improbable or unsatisfactory evidence, or clearly insufficient evidence, a reviewing court will not substitute its judgment

for that of the court below even though evidence regarding material facts is conflicting and irreconcilable.' "
See *People v. Benedik* (1974), 56 Ill. 2d 306, 310, 307 N.E.2d 382.

In the instant case, the trial judge heard the testimony and viewed the demeanor of the witnesses. He decided the State had met its burden of proof beyond a reasonable doubt and we agree.

## II.

Defendant contends the trial court erred in restricting cross-examination of Sandra Corbin. Defendant's attorney asked Sandra Corbin, "Now, you are presently under arrest, are you not?" The State objected, and the court sustained the objections.

The trial court is "vested with 'substantial discretion' to determine both the manner and scope of cross-examination." (*People v. Coles* (1979), 74 Ill. 2d 393, 395-96, 385 N.E.2d 694, quoting *People v. McCain* (1963), 29 Ill. 2d 132, 134, 193 N.E.2d 784; *People v. Jones* (1975), 60 Ill. 2d 300, 306, 325 N.E.2d 601.) The trial court's decision "will not be overturned absent a showing of a 'clear abuse' of that discretion 'resulting in manifest prejudice.' " *Coles*, 74 Ill. 2d 393, 396, quoting *People v. Halteman* (1956), 10 Ill. 2d 74, 86, 139 N.E.2d 286.

■■ " '* * * [T]he fact that a witness has been arrested * * * may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias, or a motive to testify falsely.' " (*People v. Eddington* (1979), 77 Ill. 2d 41, 46, 394 N.E.2d 1185, *cert. denied* (1980), 445 U.S. 944, quoting *People v. Mason* (1963), 28 Ill. 2d 396, 400-01, 192 N.E.2d 835.) However, the defendant's attorney on cross-examination also asked Sandra Corbin, "Did the state make any statements to you about your pending case in return for your testimony today?" Sandra Corbin, without objection, answered, "No, not to my knowledge." Sandra Corbin had no expectation of leniency as evidenced by this statement. No interest, bias, or motive on her part was present. Because of this, impeachment of the complaining witness by showing she was merely arrested is improper. (*People v. Merritt* (1973), 16 Ill. App. 3d 72, 75, 305 N.E.2d 579.) Defendant has failed to show the cross-examination was unduly restricted. We find no abuse of discretion in this regard.

## III.

Defendant contends evidence of the armed robbery was inadmissible during his trial for intimidation. We disagree.

■■ "[A]s a general rule, evidence of other crimes committed by defendant, independent of the crime for which he is being tried, is inadmissible." (*People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200; *People v.*

*Romero* (1977), 66 Ill. 2d 325, 330, 362 N.E.2d 288.) But, as the court in *Romero*, 66 Ill. 2d 325, 330, stated (quoting *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489):

> " 'Evidence which tends to prove a fact in issue is admissible though it may be evidence showing that the accused has committed a crime other than the one for which he is being tried, and evidence which goes to show motive, intent, identity, absence of mistake or *modus operandi* is admissible though it may show the commission of a separate offense.' "

The thrust of the State's case was that by words or conduct defendant intended to cause Sandra Corbin not to testify to the armed robbery. She witnessed this robbery and identified defendant as one of the robbers. At trial she could and presumably would have testified defendant committed an offense for which he could spend at least six years in prison. This established a strong motive for defendant to "intimidate" Sandra Corbin. Evidence of the armed robbery was therefore admissible in the trial of the alleged intimidation.

## IV.

■■ Defendant contends his sentence of imprisonment for two years is excessive and probation is appropriate. The trial court conducted a lengthy and complete sentencing hearing which included evidence in aggravation and mitigation. Close to one month later, the trial court conducted another sentencing hearing and heard additional testimony. The trial judge then imposed the minimum sentence permissible for intimidation which is a Class 3 felony. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—1(6).) Under these circumstances it is impossible for us to consider a lesser sentence of imprisonment.

In addition, it is totally impermissible for this court to reduce a sentence of imprisonment to one of probation. The supreme court recently pointed this out with the citation of a number of pertinent authorities in *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541. The able trial judge gave full consideration to the possibility of probation and expressly denied it. We are unable to review this action.

Defendant urges the trial court denied probation to defendant because the court believed the defendant was guilty of armed robbery for which he had previously been exonerated. It is correct the trial court did mention the fact that he himself had found defendant not guilty of the armed robbery. However, the trial court also stated clearly and definitely that the defendant had been found guilty of the offense of intimidation. The trial judge also pointed out that he had expressly granted leniency to the defendant by imposing the minimum sentence.

■■ Thus, although the trial judge mentioned the armed robbery evi-

dence which was properly "received upon the trial" (Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1(a)(1)), we cannot say that the sentence was based upon any factor other than guilt of intimidation.

For these reasons the judgment appealed from is affirmed.

Judgment affirmed.

McGLOON and CAMPBELL, JJ., concur.