THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM YOUNG, Defendant-Appellant.

First District (5th Division)   No. 81—0480

Opinion filed October 21, 1983.

Steven Clark, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Raymond Brogan, and Leslie E. South, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WILSON delivered the opinion of the court:

Following a jury trial, defendant was found guilty of murder (Ill. Rev. Stat. 1981, ch. 38, par. 9—1) and was sentenced to 40 years' imprisonment. On appeal he assigns numerous errors to the trial proceedings and contends that (1) the trial court's admission of testimony about his arrest for an unrelated crime denied him due process; (2) the court erred in ruling that defendant could not testify about a conversation he had with a friend who allegedly told defendant about threats on defendant's life; (3) the trial court committed reversible error by restricting defense counsel's cross-examination of defendant's ex-girlfriend; (4) the State improperly commented about defendant's refusal to make a statement following his arrest; and (5) the State made improper comments during cross-examination and closing argument. For the reasons set forth below, we affirm.

On August 12, 1976, at about 11:45 p.m. defendant came to see his ex-girlfriend, Juanita Howard, who was visiting her sister on East Thirty-Seventh Street in Chicago. Ms. Howard, her niece Joanne Howard, Jonathan Davis, also a relative, and Edward Cole were returning from a restaurant in Davis' car. As they got out of the car they noticed defendant walking toward them carrying a gun. Defendant

approached Ms. Howard, reached for her and stated that he wanted to talk. When she pulled away defendant drew his gun, pointed it at Cole and said that if he could not have her, no one would. He fired two gun shots from a .45-caliber pistol and fatally wounded Cole in the left side of his chest. The bullet struck Cole's heart and lung and exited his body in the right middle back. Young reached for Ms. Howard again, said that he wanted to talk to her and then ran away.

Although a warrant was issued, defendant was not arrested until two years later, on December 12, 1978, at approximately 11:45 p.m. when he was apprehended after he was seen climbing out of the broken window of a factory in a commercial district in Chicago. During processing at the police station on the night of his arrest it was discovered that there was an outstanding warrant for defendant's arrest for the murder of Edward Cole.

Juanita Howard, the State's first trial witness, testified that she had known defendant for about two years and had lived with him for six months. Their relationship ended about six weeks prior to this incident. She said that Cole was unarmed when he was shot and that her sister's husband and Joanne Howard took Cole to the hospital that night. She stated under cross-examination that her mother disapproved of her relationship with Young and did not want her to see him. At the time of the shooting she had been dating Cole for about three weeks. She saw defendant three of four times after the shooting at various places, usually on the street but once at the home of defendant's brother. She went there after her brother informed her that defendant wanted to meet with her. She said she knew that the police were looking for defendant but did not tell them that she had seen him several times after the shooting.

Next to testify was Dr. Eupil Choi, an assistant Cook County medical examiner who specializes in forensic pathology. Choi performed the autopsy on Edward Cole. He said that Cole died as the result of a bullet wound in the chest with penetration in the heart and massive internal bleeding.

Defendant next filed a motion *in limine* requesting that the court exclude the testimony of Officer Warren Rylko, who arrested defendant in 1978. Rylko stated in an *in camera* conference that while he and another officer were patrolling a commercial area he saw defendant jump from a broken factory window. Rylko stopped the squad car, got out with the police dog and told Young to halt. Young began to run but then stopped. He was searched and taken to the thirteenth district police station. During processing it was discovered that there was an outstanding murder warrant for defendant's arrest.

The court ruled that Rylko could not testify about the type of neighborhood where the arrest took place nor could he mention that the businesses were closed. The court stated that "*** If they made the observation, told him to stop—go ahead. They made the observation. They told him to stop. He ran. They got the dog. He stopped. They put him under arrest and they brought him back, found the warrant for the murder of Ed Cole. That's all. ***" Defendant's motion for a mistrial was then denied.

The State next called Joanne Howard to testify. She stated that as she and the others got out of the car defendant approached them from the side of a building with a large gun. He told Cole that he wanted to talk to Juanita. Cole consented and said that he would not argue. When Juanita said that she did not want to talk, Young pointed the gun at Cole. Juanita walked toward defendant to convince him to put the gun down. Defendant fired a shot at Cole but missed him. He grabbed Juanita and she pulled away. Defendant fired again and the bullet entered Cole's chest. Joanne stated that defendant was the only person with a gun. After further testimony under cross-examination, redirect and re-cross-examination, the State rested its case. Defendant made a motion for a finding of not guilty, which was denied.

Prior to his testimony in rebuttal, defendant also made a motion to prohibit the State from introducing his prior convictions for armed robbery and rape. Denying the motion, the court reasoned that the convictions could be used because they occurred within the past 10 years. The court indicated that it would give the jury a limiting instruction as to the significance of the testimony.

Testifying in his own defense, defendant stated that he had lived with Juanita Howard but that her family disapproved of the relationship because he would not allow her to do what they wanted her to do. A few days before Cole's death, Juanita met him in a park and told him that Jonathan Davis, Joanne and Ed Cole "would do something" to him if he continued to see her. He further stated that on the night of the shooting at about 9:30 or 10 p.m. he was on his way to visit his friend, Larry Bausley. Davis, Cole and Joanne drove by, stopped the car to look at him and then drove on. Defendant continued walking and noticed that they were standing by the car as he approached. Defendant said that Davis approached him and that he "*** asked me what I wanted to do. I told him that I just wanted to talk." Joanne Howard then reached into her purse and pulled out a gun. Cole reached into the car as though he was going under the front seat. Defendant testified that Joanne fired three shots and that

defendant fired once into the ground. He saw that Cole held something in his hand which gleamed. Defendant backed away and fired a second shot which struck Cole in the chest. He said that he panicked and ran but that he would not have fired any shots that night if he had not been in fear of his life. He threw his gun in a garbage disposal. Defendant further stated that in 1971 he had pled guilty to two offenses of robbery and one rape.

On cross-examination, defendant stated that although he was not afraid of Juanita, Joanne, Cole or Jonathan Davis, Davis was a member of the Black Stone Ranger gang and that he and Joanne had shot at defendant at least four times in the past. Under further questioning defendant said that he *was* afraid and that he had a gun that night because he did not want to be hurt. Further testifying, defendant said that after he was arrested, assistant State's Attorney Thomas Dwyer introduced himself and read defendant his *Miranda* rights. Defendant stated that he did not discuss the incident with Dwyer and told him to take him back to his cell.

On redirect examination defendant testified that he had never seen the faces of the individuals who shot at him in the past although other people told him that Juanita Howard's family was involved.

Under re-cross-examination, defendant said he was not a member of a gang in 1976. At the close of his testimony, defendant rested his case.

Out of the presence of the jury the State informed the court that it would call assistant State's Attorney Dwyer to impeach defendant's testimony and would then read into evidence the certified copy of defendant's convictions. Defendant objected to the reading of his conviction record and argued that he had already testified about these offenses under direct examination. His objection was overruled.

Dwyer testified that he informed defendant of his *Miranda* rights and then asked whether defendant knew about the shooting. He said that defendant answered that he didn't know anything, that he was not there when Cole was shot but that he knew Cole and Juanita Howard.

On cross-examination, Dwyer reviewed a copy of his log entry which reported his conversation with Young. The entry showed that Young refused to make a statement and denied any knowledge of the shooting. Dwyer explained that defendant never said he did not wish to make a statement; rather, he indicated that he knew nothing about the shooting and was not there when it started. Dwyer said that the log entry was merely a summary which indicated that defendant did not want to discuss the facts of the case. On redirect examination

Dwyer reiterated that defendant told him that he was not present when Cole was shot. The State rested. Defendant's motion for a mistrial was denied but the court reserved its ruling on his motion for a directed verdict. Following closing arguments by both sides, the jury found defendant guilty of murder and sentence was entered on the verdict. Defendant appeals.

OPINION

Defendant first challenges the admission of testimony about his arrest in 1978. He contends that although Officer Rylko did not say that he arrested defendant for burglary, the damaging details of the incident were nonetheless admitted into evidence. The State, on the other hand, argues that the jury heard only the bare essentials of defendant's arrest and that Rylko's testimony falls within the continuing narrative exception to the general rule prohibiting the admission of other crimes.

At the outset of our legal analysis, we note that the decision whether to admit other-crimes evidence is within the sound discretion of the trial court. (*People v. Lieberman* (1982), 107 Ill. App. 3d 949, 955, 438 N.E.2d 516.) The evidence is inadmissible to show that the defendant had a propensity to engage in criminal activity; however, it may be admitted when relevant for other purposes. (*People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200.) Other-crimes evidence has been held admissible if relevant to demonstrate knowledge, intent, motive, design, plan or identification (*People v. Lindgren* (1980), 79 Ill. 2d 129, 137, 402 N.E.2d 238; *People v. McDonald* (1975), 62 Ill. 2d 448, 455, 343 N.E.2d 489) or if it is relevant to police investigation of the offense at issue. The investigatory procedures must involve an integral part of the narrative of the arrest. (*People v. Scott* (1982), 108 Ill. App. 3d 607, 613, 439 N.E.2d 130.) Reference to another crime is also admissible if it explains the circumstances surrounding defendant's arrest and is part of a continuing narrative. *People v. Morthole* (1977), 51 Ill. App. 3d 919, 932, 366 N.E.2d 606.

With the general guidelines for admitting evidence of other crimes before us, we turn now to the facts of the instant case. Rylko's testimony revealed that defendant was observed as he exited a broken window at 11:45 p.m. in the area of Walnut and Damen Streets. This testimony was part of a continuing narrative which explained the circumstances surrounding defendant's arrest (51 Ill. App. 3d 919, 932) and without it the jury would have been faced with the unexplained fact that the policemen suddenly appeared and stopped defendant that day. (*People v. Lonzo* (1977), 47 Ill. App. 3d 939, 945, 365 N.E.2d

528.) We find this conclusion amply supported by the court's rationale in *Morthole* and *People v. Robinson* (1968), 98 Ill. App. 2d 285, 240 N.E.2d 397.

In *Morthole,* defendant was charged with *possession* of drugs discovered during an arrest. The arresting officer testified that he searched defendant that day because of an outstanding arrest warrant for an unrelated drug *delivery* charge. Such evidence was judged to have been properly admitted though it suggested other criminal activity because it was relevant to the circumstances of the arrest and it was part of a continuing narrative. *People v. Morthole* (1977), 51 Ill. App. 3d 919, 932.

The arresting officer in *Robinson* testified that he stopped defendant because he was driving a car that had been reported stolen. The officer looked in the rear window of the car and noticed numerous articles of stolen clothing and personal property. Although defendant was only charged with burglary, the court ruled that it was permissible for the officer to explain the circumstances surrounding defendant's arrest and to testify that he had stopped defendant when he spotted the stolen car. *People v. Robinson* (1968), 98 Ill. App. 2d 285, 288-89.

■ Similarly, in the instant case, Officer Rylko's testimony that defendant was stopped as he exited a broken window at 11:45 p.m. undoubtedly suggested other criminal activity. Nonetheless, it explained why defendant was apprehended as well as the circumstances surrounding his arrest two years after the murder.[1]

Defendant next assigns error to the trial court's ruling that he could not testify about a conversation he allegedly had with a friend, Larry Bausley, in which Bausley told defendant that Ed Cole and the Howard family had threatened defendant. Defendant contends that this testimony was nonhearsay evidence admissible to show his state

---

[1]The cases defendant heavily relies on are unpersuasive as in those instances the evidence of other crimes was inadmissible because the State failed to establish their relevancy to the investigation of the crime for which the defendant was charged. In *People v. Spiezio* (1982), 105 Ill. App. 3d 769, 434 N.E.2d 837, defendants were charged with burglary. An officer testified that he arrested defendants for auto theft and that during a search he discovered stolen property. This testimony was judged improper because there was no showing that made the matter of the stolen vehicle anything but a separate unrelated crime undertaken at a different place and time. Similarly, in *People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238, defendant was charged with murder and robbery. An officer testified that in a few hours after the murder defendant burned the victim's house. The court ruled that this testimony was inadmissible because the arson added nothing to the State's case except evidence of another crime which occurred after the murder.

of mind and relies on our decision in *People v. Ortiz* (1978), 65 Ill. App. 3d 525, 382 N.E.2d 303.

In *Ortiz,* the defendant contended that he should have been allowed to testify that he fatally shot a man in self-defense because he had been warned that the victim "was a killer." Reversing the trial court's judgment, we ruled that in order to justify the shooting it was necessary for the defendant to establish that he reasonably believed that the use of deadly force was necessary. Thus, the statement was probative of the defendant's state of mind at the time of the shooting and under such circumstances the rule against hearsay would not disqualify the testimony. 65 Ill. App. 3d 525, 533.

■ In the case at bar, however, there was ample testimony about the alleged threats against defendant by the Howard family. Defendant testified on direct examination that a few days before the shooting Juanita Howard told him that her family had threatened him. He further testified that Jonathan Davis and Joanne Howard had shot at him the night before the incident and that the following night he had acted in self-defense because Joanne fired three shots at him. He also stated that the reason he shot Cole was because he observed him reaching into the car to reveal an object which could have been a weapon. In view of this testimony, we cannot agree with defendant's argument that he was prejudiced by the trial court's denial of testimony about the Howard family's alleged threats on his life. Defendant was permitted to fully testify about his state of mind at the time of the shooting. He testified under direct and cross-examination that he was in fear of Juanita Howard's family, that he did not fear Cole and that he shot Cole in self-defense or by accident. Defendant's argument on this issue is therefore without merit.

Defendant next complains that the trial court erred by restricting his cross-examination of Joanne Howard. He contends that her testimony would reveal that she and her family disliked him, that she was biased and that she had a motive to lie.

The well-established rule of evidence provides that in a criminal prosecution the bias of a witness, whether favorable or adverse to the defendant, is always pertinent to the question of the witness' credibility. (*People v. O'Dell* (1980), 84 Ill. App. 3d 359, 372, 405 N.E.2d 809.) In the instant case, the pertinent testimony on this issue was as follows:

"Q. Was *your family* pretty unhappy with the fact that William and your aunt, Juanita, had been living together and dating?

Mr. Locallo: Objection, Judge.

Q. Sustained." (Emphasis supplied.)

The trial court's ruling was correct. Clearly, the question as presented would elicit a response requiring Ms. Howard to testify about her family's feelings toward defendant rather than her own. Defendant urges that his query was improperly denied because he was preparing to reveal Joanne's feelings toward him. This contention is unpersuasive. Although a defendant generally should be given the widest possible latitude in cross-examining a witness, the form that latitude takes rests in the sound discretion of the trial court. (*People v. Boyd* (1979), 69 Ill. App. 3d 671, 675, 387 N.E.2d 971.) The trial court's decision will not be overturned absent a showing of a clear abuse of that discretion resulting in manifest prejudice. (*People v. Poliquin* (1981), 97 Ill. App. 3d 122, 136, 421 N.E.2d 1362; *People v. Wallace* (1980), 90 Ill. App. 3d 960, 965, 414 N.E.2d 99.) Here, the trial court did not abuse its discretion because it could not be expected to speculate that defense counsel's strategy was to reveal Ms. Howard's prejudices. We note that after the State's objection was sustained, counsel did not rephrase his question but chose instead to next inquire whether Ms. Howard knew that her Aunt, Juanita, had continued to see defendant (followed by a second objection by the State which was sustained) and how much time had elapsed between the time defendant fired his two shots. Based on these facts, we find that the court's ruling was correct. Defendant has failed to show that he was prevented from cross-examining Joanne Howard as to her possible bias because no such question was ever asked of her.

Defendant further contends that the State improperly commented on his right to remain silent following his arrest. Defendant testified that at the police station he told assistant State's Attorney Dwyer that he did not want to talk and to take him back to his cell. Defendant reiterated this statement on redirect examination. Dwyer was then called by the State to testify in rebuttal. On both direct and cross-examination he stated that after defendant was advised of his *Miranda* rights he was asked about the shooting. Dwyer testified that defendant said that "*** he didn't know anything about the shooting. He wasn't present when he [Cole] was shot. And then, he told me that he knew Juanita Howard and Edward Cole. And then I asked him again, do you want to talk about the shooting and the facts of the shooting and he told me, no, I don't. I don't know anything about it. *** That was the end of my conversation with him."

A defendant who makes some statements after being advised of his right to remain silent may be impeached at trial by these statements as prior inconsistent statements. (*Anderson v. Charles* (1980),

447 U.S. 404, 408, 65 L. Ed. 2d 222, 226, 100 S. Ct. 2180, 2182; *People v. Rehbein* (1978), 74 Ill. 2d 435, 443, 386 N.E.2d 39 *cert. denied* (1979), 442 U.S. 919, 61 L. Ed. 2d 287, 99 S. Ct. 2843.) In the instant case, defendant's testimony at trial that he shot and killed Cole in self-defense clearly contradicts his statement to Dwyer following his arrest that he knew nothing about the shooting. Moreover, Dwyer properly testified that, in effect, defendant did not remain silent but elicited incriminating statements that he was not present at the shooting but that he knew Juanita Howard and Edward Cole. It is axiomatic that by taking the stand, defendant placed his credibility in issue and was subject to be impeached. Dwyer's testimony about what defendant told him therefore was not an impermissible comment on defendant's silence. Rather, the reference to defendant's post-arrest conversation was a proper impeachment by prior inconsistent statements. 74 Ill. 2d 435, 443.

■ Additionally, defendant argues that he was not found guilty of murder beyond a reasonable doubt. He contends that not only did Juanita and Joanne Howard give conflicting testimony, they tailored their story to make the shooting appear as though it was a murder. For example, Juanita testified that defendant was alone when he approached them, but Joanne said that he came with four or five men. Defendant further contends that the fact that Juanita admitted that she met with him on several occasions after the shooting discredits the State's theory of the case that Cole was murdered rather than shot in self-defense because it is improbable that Ms. Howard would willingly visit her boyfriend's killer. Defendant also argues that the record reveals inconsistent testimony about where everyone was standing at the time of the shooting.

Any inconsistencies in testimony do not negate its import but rather go to the weight the trier of fact gives to the testimony. (*People v. Yuknis* (1979), 79 Ill. App. 3d 243, 251, 398 N.E.2d 258; *People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 327, 379 N.E.2d 847.) It is the prerogative of the trier of fact to determine the truth (*People v. Manion* (1977), 67 Ill. 2d 564, 578, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513), and the appellate court's judgment will not be substituted for that of the trier of fact where the evidence is merely conflicting. *People v. Foster* (1979), 76 Ill. 2d 365, 373, 392 N.E.2d 6.

■ In the instant case, although the record reveals contradictions in the testimony, both Juanita and Joanne Howard stated that defendant approached them with a gun, that he said he wanted to talk to Juanita and that they observed defendant shoot the gun twice. The al-

leged shiny object or gun that Cole drew from under the front seat was never entered into evidence nor were any police officers who investigated the murder brought to trial to testify about its existence. We further note the absence of testimony to rebut the State's theory of the events leading up to the shooting. Thus, we believe that from the evidence presented, the jury could have properly concluded that defendant's use of deadly force was unjustifiable. We cannot say that this finding was so unsatisfactory or improbable as to raise a reasonable doubt of defendant's guilt. *People v. Kyles* (1980), 91 Ill. App. 3d 1019, 1022, 415 N.E.2d 499.

Defendant's final contention is that improper comments made by the prosecutor during cross-examination and closing argument denied him a fair trial. Specifically, he argues that the prosecutor improperly queried during cross-examination whether defendant had dealt with guns in the past, whether he knew it was illegal to carry a gun and whether defendant was a gang member.

■ Initially, we note that the proper remedial measures were taken following defendant's objections to these questions. On the second instance following defendant's objection the jury was instructed to disregard the question. Defendant failed to object to the prosecutor's question as to whether he was a gang member. Because this alleged error was not preserved for our consideration in a post-trial motion, it is considered waived on appeal. (*People v. Thomas* (1983), 116 Ill. App. 3d 216, 220, 452 N.E.2d 77.) We therefore disagree with his contention that the cumulative effect of these remarks were reversible error.[2]

As to the propriety of the prosecutor's remarks during closing argument, defendant contends that these statements denied him a fair trial because they had the effect of lessening the importance of the State's burden of proof. Although defendant objected to these statements, his post-trial motion cites only two errors, neither of which was presented for our consideration during oral argument. Defendant explains in his motion that a full and complete transcript of the trial proceedings was unavailable at the time the motion was prepared. We will therefore exercise our discretion as a reviewing court and address the alleged error that was objected to at trial and was primarily argued by both sides on appeal.

---

[2]The State concedes that it was improper for the prosecutor to question defendant about the veracity of the State's witnesses. Defendant's objection to this question was sustained and the proper remedial measure was taken by the court's instruction to the jury to disregard the statement. We find that defendant was not prejudicially harmed.

■ The record shows that the prosecutor stated that the burden of having to prove that defendant was guilty beyond a reasonable doubt "*** is not an insurmountable burden by any means. *** It is the same burden of proof that was applied in every case where persons have been convicted and are in the penitentiary." The prosecutor went on to state that he "welcomed the burden" and that defendant had been proven guilty by overwhelming evidence. He then reviewed the testimony of each occurrence witness and stated that the evidence established that defendant had performed the acts which resulted in Cole's death. Thus, when these comments are read in context and in their entirety, they fail to imply that reasonable doubt was a minor burden. (But see *People v. Martinez* (1979), 76 Ill. App. 3d 280, 285, 395 N.E.2d 86, where the court held that the prosecutor's closing statement about reasonable doubt was improper. The prosecutor's language and insinuation in that case differed from the case at bar, where as we have explained, the full thrust of the closing argument did not imply that the burden of reasonable doubt was inconsequential.) Our review of the record therefore does not support defendant's charge that these remarks implied that reasonable doubt was a *pro forma* detail. Moreover, defendant failed to establish that there was a possibility that this language, in light of all the evidence, was a material factor in his conviction. (*People v. Shorter* (1978), 59 Ill. App. 3d 468, 479, 375 N.E.2d 513.) Reversal is not warranted unless the remarks influenced the jury in a manner that resulted in substantial prejudice to the accused. (*People v. Yuknis* (1979), 79 Ill. App. 3d 243, 250, 398 N.E.2d 258.) In the instant case, the prosecutor's statements, even if left unsaid, would not have resulted in a different verdict because there was more than enough evidence from which the jury could conclude that defendant was guilty beyond all reasonable doubt. Accordingly, we find that defendant's argument that the prosecutor's remarks deprived him of the right to a fair trial is unsupported by the record.

For the foregoing reasons, the trial court's judgment is affirmed.

Affirmed.

LORENZ and SULLIVAN, JJ., concur.