THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL GOMEZ, Defendant-Appellant.

First District (4th Division) No. 1—90—3196

Opinion filed September 30, 1992.

Irving Miller, of Ryan, Miller & Trafelet, P.C., of Chicago (Mary Ellen Dienes, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Christine Perille, Special Assistant State's Attorney, and Renee Goldfarb and James Fitzgerald, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

Following a jury trial, the defendant, Daniel Gomez, appeals from his convictions for possession of cannabis and possession of cocaine with intent to deliver. We consider (1) whether the trial court erred in failing to conduct an evidentiary hearing pursuant to *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674, to determine whether the search warrant was based on a false affidavit; (2) whether the defendant was denied due process of law when the trial court denied a pretrial discovery motion, restricted the cross-examination of a State witness, and did not allow the jury to view certain defense exhibits during their deliberations; (3) whether the defendant was proved guilty beyond a reasonable doubt; and (4) whether the defendant's 30-year sentence was excessive.

Officer Charles Bartucci prepared a complaint for a search warrant of the defendant's apartment based upon the information given to him by a confidential informant. In the affidavit supporting the complaint, Bartucci stated that in the previous two months, the informant gave him information on two occasions which resulted in one arrest. Bartucci stated that on December 22, 1988, the informant went to the first-floor rear apartment at 3004 West Addison Street and was allowed entry into the apartment by a white male known as "David." David asked the informant how many one-sixteenths of cocaine he wanted to purchase for $100. The informant told David that he just wanted one and gave David $100. David retrieved one clear plastic bag containing white powder from a metal box in the living room, and the informant observed at least 30 more clear plastic bags with white powder in the same metal box. The informant snorted some of the cocaine and told Bartucci that he received a "good high" from it. David asked the informant to go with him to the second-floor rear apartment. David opened the door to the second-floor apartment with a key that he had in his pocket. David showed the informant a large clear plastic bag which contained about 200 clear plastic bags of crushed white powder. David bragged that once sold, this would serve as his vacation money. David told the informant to come around anytime because he always had a good supply on hand.

The trial judge issued a warrant to search the defendant's second-floor rear apartment which was executed on December 22, 1988. The police recovered cocaine, cannabis, and $13,980 in cash.

The defendant was arrested and charged with possession of cannabis and possession of cocaine with intent to deliver.

The defendant moved to quash the search warrant and argued that the affidavit supporting the warrant contained false statements and requested an evidentiary hearing pursuant to *Franks*. The defendant's motion was supported by 11 additional search warrant complaints which were sworn to by Officer Bartucci. The complaints illustrated that in nine cases, Bartucci used language which was very similar to that in the defendant's complaint when describing what the alleged subjects stated to the informants. The motion was also supported by the defendant's affidavit which stated that he lived in the second-floor rear apartment but had never been in the first-floor apartment, did not have a key to the first-floor apartment, that he was never known by the name of David, that no one had a key to his apartment other than his landlord, and he never gave a key to his apartment to anyone named David. Also included was the affidavit of Visut Voratanitkitkul, who stated that he is the owner of the building at 3004 West Addison, was the defendant's landlord, that the defendant was the tenant in the second-floor rear apartment until his arrest on December 22, 1988, that Salvador Tinajero was the tenant in the first-floor rear apartment until he moved out two weeks before the defendant's arrest, that no one occupied the first-floor rear apartment, that no one named David occupied that apartment, that no one had keys to the first-floor apartment, that no one other than the defendant was given keys to the second-floor apartment, and that on December 22, 1988, the police caused much damage to the basement and the first- and second-floor rear apartments in his building.

The trial judge held that the defendant had failed to make a sufficient preliminary showing to warrant an evidentiary hearing and denied the motion.

The defendant also filed a discovery motion in which he requested all of the police reports written by Officer Bartucci in 1988, 1989, and 1990 to determine whether the language which Bartucci used to describe the events in other cases involving the purchase of narcotics by undercover agents was identical to the language Bartucci used in the instant case. The trial judge denied the defendant's discovery request as he found it to be overly broad and overly burdensome.

At trial, Visut Voratanitkitkul testified that in June 1988, he leased the second-floor rear apartment to the defendant. The defendant paid his rent only once and never asked Visut to make

any repairs in his apartment between June and December of 1988. The first-floor rear apartment had been rented to another tenant who moved out in November 1988.

Police officers Bartucci and Mazur testified that at 11 p.m. on December 22, 1988, they executed a search warrant for the second-floor rear apartment at 3004 West Addison. They were accompanied by Officers Garcia, Gonzales, Brown, Newman, Nelson, and Burn, who assisted in securing the building and executing the warrant. Bartucci knocked on the door of the second-floor apartment three times and announced that they were the police and they had a warrant. The officers did not hear a response and Bartucci used a sledgehammer to open the door. Bartucci saw a light on in the kitchen, and when he entered the room, the defendant and Hernandez, a codefendant whose trial was severed from the instant case, were seated at the kitchen table. The officers saw four plastic bags containing white powder and American currency on the table in front of the defendant. The defendant and Hernandez were arrested. Officer Mazur recovered four plastic bags containing crushed green plants and an electronic scale from the floor near the table. Officers Newman and Nelson also entered the apartment and searched the remainder of the apartment, recovering no other drugs or currency. The substances were taken from the apartment, inventoried at police headquarters, and delivered to the crime lab.

Gwendolyn Brister, a chemical analysis expert, testified that on December 28, 1988, she was assigned to analyze seven plastic bags of white powder and five plastic bags of alleged marijuana. Brister analyzed one bag of white powder, weighing 1,003.7 grams, and indicated that in her opinion, the substance was cocaine. Brister stated that since the "highest sentencing weight is 900 grams for all practical purposes," she only did preliminary tests on the white powder in the other bags and all of these tests indicated that they also contained cocaine. Brister also analyzed and confirmed that the other bags contained cannabis. The plastic bags were turned over to the fingerprint department.

Officer Codina, an expert in laser testing, tested the bags for fingerprints using a laser methodology and found no fingerprints. Using a different technique, Codina discovered a fingerprint on one of the bags. The fingerprint did not match that of either defendant.

Visut Voratanitkitkul testified for the defense that he returned home at 1 a.m. on December 23, 1988, and entered through the rear of the building. He discovered considerable damage to his building: damage to the front door of the first-floor rear apartment,

damage to the front door of the second-floor rear apartment, and the locks on four individual storage sheds in the basement were broken. He took photographs of the damage to his building which were admitted into evidence and published to the jury.

Jose Hernandez, brother of codefendant Hernandez, testified that when he first arrived at the defendant's apartment at 10:30 p.m. on December 22, 1988, he did not see anything on the kitchen table. About 30 minutes later, he went to pick up a pizza, and when he returned, he was searched and handcuffed by officers in the apartment. About 20 minutes later, two officers came in the rear door of the apartment carrying book bags. They placed the bags on the kitchen table, opened them, laughed, and said "look what we found here." One officer removed white stuff from the bag, and another removed what appeared to be marijuana. Hernandez testified that he did not see a scale or any money. After an hour had elapsed, the officers removed Hernandez' handcuffs and instructed him to remain in the apartment for an additional 15 minutes after they left. Hernandez followed their instructions and then left the apartment.

The defendant first challenges the denial of his motion to quash the search warrant brought under *Franks* (438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674). The defendant contends that he was entitled to an evidentiary hearing on his pretrial motion to suppress. In *Franks*, the United States Supreme Court recognized that although an affidavit supporting a search warrant is presumed valid, a defendant has a limited right to challenge the veracity of the affidavit. The Court held that "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." (*Franks*, 438 U.S. at 155-56, 57 L. Ed. 2d at 672, 98 S. Ct. at 2676.) The Illinois Supreme Court in *People v. Lucente* (1987), 116 Ill. 2d 133, 506 N.E.2d 1269, addressed the issue of what is required in order for the defendant to make "a substantial preliminary showing." The court stated that while it is true that the defendant's ultimate burden is to show by a preponderance of the evidence that the affiant-officer made deliberate or reckless false statements, *Franks* does not require that the defendant disprove every other possibility at the preliminary stage. As is true in the instant case, the warrant affidavit at issue in *Lucente* included infor-

mation which the officer attributed to a confidential informant. The court noted that in such cases, where an informant's identity is unknown, and the defendant cannot offer the informant's testimony as proof that the officer lied, a defendant lacks the necessary information to determine the source of the allegedly false statements. This reality affects the burden of proof which a defendant can reasonably sustain in order to achieve a hearing and to protect against perjurious warrant applications.

The court defined the precise standard of proof required of the defendant to warrant a hearing as "somewhere between mere denials on the one hand and proof by a preponderance on the other." (*Lucente*, 116 Ill. 2d at 152, 506 N.E.2d at 1277.) The court noted that the decision in any given case is subjective and must be based on a careful balancing of the statements in the warrant affidavit versus those in support of the defendant's challenge to the warrant. (*Lucente*, 116 Ill. 2d at 153, 506 N.E.2d at 1277.) The judgment of the trial judge will not be disturbed if it is exercised within permissible limits.

■ With these principles in mind, we turn to the showing made by this defendant. As we described earlier in the opinion, the defendant submitted 11 search warrant complaints completed by Officer Bartucci. Nine of the complaints alleged that the individuals who were selling drugs told the informants basically to come back anytime, since they always had a good supply on hand. Specifically, the warrants read as follows:

"1. *** 'come over anytime I always have a real good supply on hand.'

2. *** 'come anytime day or night that same always had a good supply of cocaine on hand.'

3. *** 'we always have a supply.'

4. *** 'he always keeps ½ o.z's or 1 o.z's on hand, and to come anytime.'

5. *** 'come anytime I always have a supply either here or upstairs.'

6. *** 'she always has a good supply of cocaine on hand and c/i could stop over any time of day or night.'

7. *** 'stop by any time I always have some on hand.'

8. *** 'come anytime I always have a good supply on hand.'

9. *** 'come around anytime because he always has a good supply on hand.' "

The defendant argues that it is improbable that in his case, and nine other cases, the drug dealer would essentially make the same parting remark to the informant. Additionally, the defendant submitted affidavits which illustrated that his name, Daniel, was not the same as the person named in Bartucci's affidavit, namely, David. Further, the defendant did not live in the first-floor rear apartment where the drug sale took place and did not have a key to the apartment. The landlord's affidavit stated that the first-floor apartment was vacant and no one had a key.

The State argues that the defendant did not make a substantial preliminary showing and that the trial court in so ruling did not abuse its discretion. We disagree. We believe that the defendant's proof was sufficient to warrant a preliminary hearing. Balancing the officer's affidavit with the defendant's affidavits and Bartucci's search warrant complaints, we find that while the defendant did not disprove every possibility, he did provide evidence that he was not the named party in Bartucci's affidavit, he did not live where the transaction occurred, nor did he have a key to that apartment, and the transaction occurred in an apartment which was not rented at the time. Additionally, the similarities in the search warrants which were submitted provide further evidence to warrant a preliminary hearing. Therefore, we find that the trial court abused its discretion when it denied the defendant the opportunity to challenge the veracity of the officer's affidavit at a hearing. Accordingly, we vacate the judgment and remand.

In the event that the defendant does not meet his burden of proof at the evidentiary hearing and the warrant is upheld, we address the issues which the defendant raises on appeal with regards to his trial.

The defendant alleges that he was denied due process of law at various stages of his trial when the trial court inhibited his presentation of his defense to the jury. We only address the defendant's arguments where he cited legal authority. 87 Ill. 2d R. 341(e)(7).

The defendant first argues that the trial judge's denial of his pretrial motion for discovery interfered with his ability to impeach Officer Bartucci. The discovery request was for all of Officer Bartucci's reports over a three-year period of time in cases where Bartucci found drugs in open view. The defendant argues that in other reports which he had the opportunity to review, every time Bartucci arrested an individual in a drug case and found no documentation of the person's residence, he would state in the report that the person was seated at a table with the narcotics in plain view. The

defendant needed all of Bartucci's case reports to impeach his credibility at trial and to advance his theory that the officers brought the drugs into Gomez' apartment and essentially framed him.

■ In deciding the discovery motion, it is the trial court's duty to determine the relevance and materiality of the materials and whether the request is unreasonable or oppressive. (*People ex rel. Fisher v. Carey* (1979), 77 Ill. 2d 259, 396 N.E.2d 17.) The trial court has broad discretion in ruling on issues of relevance and materiality, and its decision will not be overturned absent an abuse of discretion. (*People v. Freeman* (1987), 162 Ill. App. 3d 1080, 516 N.E.2d 440.) We do not believe the trial court abused its discretion in denying the instant discovery request. Considering the nature of drug arrests, the relevance of all of Bartucci's reports over a three-year period to the defendant's guilt in the instant case is questionable. The defendant did have the opportunity to impeach Bartucci at trial with other matters and amply argued his theory of the case before the jury. Moreover, Officer Mazur was also present when the defendant was arrested and corroborated Bartucci's account of the events. Thus, we do not believe that the denial of the defendant's discovery request was material to the finding of the defendant's guilt.

■ The defendant next contends that he was denied due process when he was not allowed to use a photograph of the door to the defendant's apartment during his cross-examination of Officer Bartucci. The photograph was taken by the landlord after the defendant's arrest and illustrated the damage to the door caused by the officers' forced entry into the apartment. The defendant argues that he could not properly impeach Bartucci's credibility by showing that the damage to the door was greater than what would have resulted if officers had entered as Bartucci testified.

The scope of cross-examination is within the trial court's discretion. (*People v. Young* (1983), 118 Ill. App. 3d 803, 455 N.E.2d 845.) We do not believe that the trial court abused its discretion in the instant case.

The defendant further contends the trial court erred when it refused to send the photographic exhibits to the jury room during jury deliberations even after the jury asked to view the photographs in a written note to the judge. Specifically, the jury requested to see the landlord's photograph depicting the damage to the defendant's front door and the photograph depicting the damage to the rear door.

■ Initially, we note that the trial court has considerable discretion in deciding what exhibits should be given to the jury and this decision will not be reversed on appeal unless there was an abuse of such discretion prejudicial to the defendant. *People v. Allen* (1959), 17 Ill. 2d 55, 160 N.E.2d 818; *People v. Castillo* (1976), 40 Ill. App. 3d 413, 352 N.E.2d 340.

The record indicates that the trial judge did not send the photographs back to the jury room because, during trial, 18 photographs taken by the landlord illustrating the damage to the building were admitted into evidence and published to the jury. Each individual juror was allowed to examine each photograph as long as he or she desired. The judge admonished the jury to view the photographs carefully since this may be the last time they had the opportunity to observe them. The judge was concerned with sending two of the photographs back to the jury room and not the remaining 16. The defendant argues that he was prejudiced because the photographs which depicted the damage to the defendant's front and rear apartment doors demonstrated that the police version as to where the narcotics were found was a fabrication.

We believe that because the photographs at issue were admitted into evidence, published to the jury, and the defendant argued his theory of the case during closing argument, he was not prejudiced by the judge's decision not to send the photographs back to the jury. Thus, we find that the judge did not abuse his discretion.

The defendant next argues that the State failed to prove his guilt beyond a reasonable doubt because the State did not prove that the narcotics were in the defendant's possession and the State did not prove the identity of the controlled substance. We disagree and conclude that there was sufficient evidence to support the jury's verdict.

■ In evaluating the sufficiency of proof upon review, this court must assess whether the evidence, when viewed in the light most favorable to the State, allows a rational trier of fact to find the elements of the offense beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781.) The jury heard the testimony of Officers Bartucci and Mazur that they entered the defendant's apartment on December 22, 1988, and found the defendant seated at the kitchen table and recovered plastic bags which contained cocaine and marijuana, a scale, and American currency. The jury heard evidence that the defendant leased the apartment in which the drugs were recovered. The jury also heard

the testimony of Hernandez, who stated that the police brought the drugs into the defendant's apartment and then arrested him. The jury also viewed 18 photographs which displayed damage to the entrance doors to the first- and second-floor apartments and areas of the basement. In his brief, the defendant has argued the evidence at trial, pointed out the inconsistencies, and how the evidence supports his theory of the case. The jury heard the same information during the defendant's closing argument at trial. It is the function of the jury as trier of fact to determine the credibility of witnesses and to resolve any conflicts or inconsistencies in the evidence. It is not the function of the reviewing court to retry the defendant. (*People v. Sanchez* (1986), 115 Ill. 2d 238, 503 N.E.2d 277; *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.) We believe a rational trier of fact could have found, beyond a reasonable doubt, that the narcotics were in the defendant's actual possession.

The defendant has also argued that the State did not prove the nature or the weight of the substances alleged to be cocaine and failed to prove a continual chain of custody for the alleged cocaine. We disagree. The State presented the testimony of expert witness Brister, who testified that in her analysis of one bag of white powder weighing over 1,000 grams, within a reasonable degree of scientific certainty, the substance was cocaine. She also performed preliminary tests on the other bags of white powder and testified that all of the preliminary tests indicated that the substances were cocaine. This evidence was sufficient for a rational trier of fact to have found, beyond a reasonable doubt, that the recovered white powder was cocaine. Similarly, the jury heard the testimony of Bartucci and Brister attesting to the chain of custody from the time the drugs were recovered through the storage of the drugs after they were tested. In establishing a chain of custody, the State is required to demonstrate a reasonable probability that the evidence has not been changed in any important respect. (*People v. Valentin* (1978), 66 Ill. App. 3d 488, 384 N.E.2d 67.) We believe the State met its burden of establishing the chain of custody for the cocaine.

Finally the defendant contends that the 30-year sentence is excessive. It is well established that the trial court has wide discretion in sentencing and is in a superior position to determine what is proper. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882; *People v. Del Percio* (1983), 118 Ill. App. 3d 539, 454 N.E.2d 1169.) The sentence imposed by the trial judge was within the statutory range for possession of a controlled substance with intent to deliver

of not less than 15 years nor more than 60 years. At the time of the sentencing hearing, the judge heard stipulated testimony that at the time of his arrest in the instant case, the defendant was on bond in another case where he was allegedly in possession of 477 grams of cocaine. The judge considered as a mitigating factor that the defendant had no other criminal convictions. The judge noted that an aggravating factor was the seriousness of the offense and the defendant's intentional involvement in a business which results in great societal harm. We do not believe the judge abused his discretion in imposing a 30-year sentence.

For the foregoing reasons, we vacate the judgment of the trial court and remand with instructions to conduct a *Franks* hearing. In the event that the defendant fails to meet the burden of proof required to quash the search warrant, the judgment should be reinstated.

Vacated and remanded.

JOHNSON and McMORROW, JJ., concur.